FILED
CLERK, U.S. DISTRICT COURT

AUG 13 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   ERVIN CHARLES ST. AMAND,          ) NO. CV 00-5963-TJH(E)
                                       )
12                    Plaintiff,       )
                                       )
13        v.                           ) MEMORANDUM AND ORDER
                                       )
14   SHERMAN BLOCK, et al.,            )
                                       )
15                    Defendants.      )
                                       )
16   _____)

17

18        For the reasons discussed below, the Complaint is dismissed with

19   leave to amend.   See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

20

21                        PROCEDURAL BACKGROUND

22

23        On June 2, 2000, Plaintiff, proceeding pro se, lodged a civil

24   rights complaint in this Court and submitted a declaration seeking

25   leave to proceed in forma pauperis.   On June 9, 2000, the District

26   Judge denied leave, based on a recommendation by Magistrate Judge

27   Margaret A. Nagle.   Plaintiff appealed.

28   ///

1    On February 20, 2002, the United States Court of Appeals for the

2    Ninth Circuit affirmed in part and reversed and remanded in part.  See

3    St. Amand v. Block, 34 Fed App'x 283 (9th Cir. 2002).  The Ninth

4    Circuit ruled that Plaintiff's Eighth Amendment claims alleging that

5    Defendants "ignored Plaintiff's requests for medical attention for a

6    week resulting in a perforated appendix, refused to follow his

7    doctor's directions to change his dressing post-surgery, and broke and

8    failed to replace his prosthetic leg, knee brace and surgical support

9    hose," did not appear frivolous.  Id. at 284.  The Ninth Circuit

10   further held that Plaintiff's claims under the Americans with

11   Disabilities Act and the Rehabilitation Act alleging that Defendants

12   treated Plaintiff differently because he was an amputee confined to a

13   wheelchair and denied him the benefits of the law library also did not

14   appear frivolous.  Id.  The Court affirmed the dismissal of

15   Plaintiff's remaining claims because they lacked "arguable substance

16   in law or fact."  Id.  The Court remanded for a determination whether

17   Plaintiff's "financial condition allowed him to proceed in forma

18   pauperis with these causes of action as to all defendants."  Id.  The

19   Ninth Circuit's docket reflects that the mandate issued on March 15,

20   2002.[1]

21

22   A stamp on this Court's copy of the Ninth Circuit's judgment

23   indicates that the judgment was received in this Court over six years

24   later, on May 7, 2008.  The District Court docket also appears to

25   _____

26   [1]    The Court takes judicial notice of the Ninth Circuit's
     docket in St. Amand v. Block, Ninth Circuit case number 00-56093,
27   available on the PACER database at www.pacer.uspci.uscourts.gov.
     See Mir v. Little Company of Mary Hosp., 844 F.2d 646, 649 (9th
28   Cir. 1988) (court may take judicial notice of court records).

1   indicate that this Court received the Ninth Circuit's judgment for the
2   first time on May 7, 2008.

4        The Court's file contains a document from Plaintiff, bearing a
5   signature date of April 17, 2002, entitled "In re: 00-56093 (Remanded)
6   'second,' Urgent Notice to the Court For: Urgent Request for Counsel,
7   the First was Filed 'Mar 13th, 2002.'"  The docket does not reflect
8   that this document was ever filed.  On June 28, 2002, Plaintiff filed
9   an "Urgent Notice to the Court," notifying the Court of a change of
10  address, requesting a settlement conference, requesting service of
11  process by the United States Marshal, and requesting appointment of
12  counsel.  On August 6, 2002, Plaintiff filed a "Notice of Change of
13  Address," notifying the Court of a change of address and again
14  requesting a settlement conference and appointment of counsel.  The
15  file does not indicate that the Court ever ruled on Plaintiff's
16  April 17, 2002, June 28, 2002 or August 6, 2002 requests.

18       The docket contains no entries between August 14, 2002, when the
19  record on appeal was returned to this Court, and April 10, 2008.  On
20  April 10, 2008, the District Judge issued an order notifying Plaintiff
21  that the case would be reopened and ordering Plaintiff to file a new
22  application to proceed in forma pauperis.  On April 15, 2008,
23  Plaintiff filed another request to proceed in forma pauperis.  On
24  April 29, 2008, Plaintiff filed another request for appointment of
25  counsel.  On June 24, 2008, the District Judge denied Plaintiff's
26  request for appointment of counsel.
27  ///
28  ///

1    On July 3, 2008, Plaintiff filed a First Amended Complaint.  On

2    July 9, 2008, the District Judge issued a "Notice of Reference to a

3    United States Magistrate Judge," referring the matter to Magistrate

4    Judge Nagle pursuant to General Order 05-07.[2]  Also on July 9, 2008,

5    the District Judge issued another "Notice of Reference to a United

6    States Magistrate Judge," referring the matter to the undersigned

7    Magistrate Judge pursuant to General Order 05-07.  The Notice of

8    Reference to the undersigned Magistrate Judge was not entered on the

9    docket until July 30, 2008, however.

10

11    In the meantime, apparently unaware that the case had been

12    referred to a different Magistrate Judge, Judge Nagle issued an "Order

13    re Civil Rights Case" on July 15, 2008.  On July 17, 2008, the

14    District Judge issued an order advising Plaintiff that the First

15    Amended Complaint filed on July 3, 2008 would be construed as the

16    original complaint ("Complaint"), and indicating that "service of

17    process may proceed."  On July 24, 2008, Judge Nagle issued an order

18    vacating the "Order re Civil Rights Case" in light of the District

19    Judge's July 17, 2008 order.

20

21    On July 28, 2008, the District Judge granted Plaintiff's request

22    to proceed in forma pauperis.  On August 4, 2008, the undersigned

23

24

25

26

27    _____

28        [2]    Although the Notice of Reference to Judge Nagle is not
      on the docket, it is contained in the Court's file.

Magistrate Judge received the file in chambers.[3]

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff's claims arise out of Plaintiff's alleged incarceration at the Los Angeles County Men's Central Jail between September of 1998 and March of 1999.  The Defendants are: (1) former Los Angeles County Sheriff Sherman Block; (2) Undersheriff Terry L. Harper; (3) Captain William G. Christiansen; (4) Lieutenant Rogers; (5) Men's Central Jail Chief Physician John C. Clark; (6) jail physician "Dr. Johnson"; (7) Nursing Supervisor Barbara Marshall; (8) Second Watch Supervisor "Nurse Smith"; (9) "Nurse Woods"; (10) Sergeant Robert Klein;[4] (11) Deputy Delatorre; (12) Deputy Zimmer; (13) Sergeant Horwitz; and (14) Los Angeles County Sheriff Leroy Baca.  Plaintiff sues all Defendants in their individual and official capacities.

The Complaint is not a model of clarity.  In "Claim I," Plaintiff alleges that he is a "B/K amputee"[5] who suffered from severe osteoarthritis during the relevant time period (Complaint, p. 5). Plaintiff alleges that Defendants Block, Harper and Christiansen assertedly classified and "stigmatized" Plaintiff as a sexually

---

[3]    The extreme delay and significant confusion in this case are regrettable, and appear to have arisen from errors of unknown origin occurring either in the District Court or in the Circuit Court or both.

[4]    Plaintiff spells Defendant Klein's name "Kline" at several places in the Complaint.  The Court employs the spelling first used.

[5]    It appears that the term "B/K" may refer to a below-the-knee amputation.

violent predator, thereby allegedly permitting jail staff and medical staff to subject Plaintiff to assertedly inhuman punishment in violation of the Eighth Amendment, the Fourteenth Amendment, the Americans with Disabilities Act, and the Rehabilitation Act (id.). Plaintiff alleges that Defendants were deliberately indifferent to Plaintiff's request for medical treatment for a week, until Plaintiff's kidneys allegedly "shut down, due to appendicitis" (id.). Plaintiff alleges that the court dismissed the sexually violent predator case against Plaintiff on April 13, 1999 (id.).

In "Claim II," Plaintiff alleges that Defendants Clark, Marshall, Johnson, Rogers, Horwitz, and unidentified nursing staff who worked the module's sick call and pill call between September 25, 1998 and October 1, 1998 were deliberately indifferent to Plaintiff's medical needs in asserted violation of the Eighth Amendment, Due Process, Equal Protection, and the Americans with Disabilities Act (Complaint, p. "5/7").[6]  Plaintiff alleges Defendants assertedly relied on the "stigma" that Plaintiff was a sexually violent predator to deny Plaintiff medical care for a full week, causing Plaintiff's kidneys to shut down due to appendicitis (id.).  Plaintiff assertedly was not allowed to see a doctor until the evening of September 30, 1999, when Defendant Dr. Johnson allegedly gave Plaintiff Motrin and medication for nausea and sent Plaintiff back to Plaintiff's module (id.).  On October 1, 1999, after Plaintiff assertedly notified his attorneys and

_____

[6]     The form Complaint contains a page 5 followed by nonidentical pages also numbered page 5, but which bear handwritten page numbers such as "5/7," "5/8," etc.  The Court employs Plaintiff's pagination.

1 the judge, Plaintiff allegedly eventually was sent to the clinic with

2 a 102-degree temperature and later was transferred to LAC/USC Medical

3 Center (id.).

4

5     In "Claim III," Plaintiff alleges that unidentified supervising

6 sergeants and deputies incited other unidentified deputies to break

7 Plaintiff's prosthesis and take Plaintiff's knee-brace and support

8 hose, and incited nursing staff and others not to help Plaintiff after

9 Plaintiff underwent an "appendectomy - laparotomy" (Complaint,

10 p. "5/8"). Unidentified Defendants allegedly treated Plaintiff

11 differently from similarly-situated inmates, assertedly in violation

12 of Due Process, Equal Protection, the Eighth Amendment, the Americans

13 with Disabilities Act and the Rehabilitation Act (id.). Apparently

14 before the surgery, an unidentified supervising sergeant allegedly

15 endeavored unsuccessfully to talk a doctor out of admitting Plaintiff

16 to the hospital, and then allegedly angrily informed the doctor that

17 Plaintiff could not be housed in the jail's ward (id.). After the

18 surgery, Plaintiff allegedly was moved to various jail wards after

19 unidentified deputies assertedly announced to each ward that Plaintiff

20 was a sexually violent predator (Complaint, p. "5/9"). Unidentified

21 deputies allegedly incited nurses not to help Plaintiff, until doctors

22 assertedly ordered pain medication and ordered nurses to change

23 Plaintiff's dressing and to treat Plaintiff like any other patient

24 (id.). Plaintiff's property allegedly was returned to Plaintiff, and

25 Plaintiff assertedly noticed that the prosthesis was damaged and the

26 knee-brace had been cut (id.). An unidentified deputy allegedly

27 kicked Plaintiff's appliances into a corner, and someone allegedly

28 took Plaintiff's support hose (id.). Plaintiff allegedly notified the

1 | judge (id.).

2

3       "Claim IV" incorporates Plaintiff's previous allegations.
4  Plaintiff also alleges that unidentified Defendants discriminated
5  against Plaintiff in handling Plaintiff's grievances and refused to
6  obey court orders concerning Plaintiff's medical treatment (Complaint,
7  p. "5/10").  Defendants Baca, Christiansen, Rogers, Clark, Marshall,
8  Smith, Woods, Horwitz, Klein, Zimmer and Delatorre, "et al.,"
9  allegedly subjected Plaintiff to inhuman punishment "as an SVP later
10 dismissed by a Los Angeles Superior Court" (id.).  Plaintiff alleges
11 that, after his return to the jail following the surgery, Defendant
12 Woods assertedly refused to change Plaintiff's dressing even after the
13 Superior Court allegedly ordered the dressing changed, and allegedly
14 refused to check Plaintiff's blood pressure (id.).  Defendants Baca,
15 Christiansen, Rogers, Clark, Marshall, Smith, Horwitz, Klein,
16 Delatorre and Zimmer all allegedly refused to heed Plaintiff's
17 grievances and to follow court orders (Complaint, pp. "5/10" -
18 "5/13").  Unidentified floor deputies allegedly caused Plaintiff to
19 miss shower days (Complaint, p. "5/12").  Deputies allegedly forced
20 Plaintiff to walk down an escalator on crutches, took Plaintiff's
21 crutches, and allegedly forced Plaintiff to hop on his arthritic knee
22 (id.).  Defendant Delatorre allegedly caused Plaintiff to miss lunch
23 and pill call, and allegedly made Plaintiff stand against the wall
24 from 1 p.m. until 3:45 p.m., when another deputy sent Plaintiff back
25 to the module (Complaint, p. "5/13").  Plaintiff alleges that, on
26 October 27, 1999, following Plaintiff's release from jail, Plaintiff
27 underwent total knee replacement surgery for the left knee (id.).
28 ///

1      Plaintiff seeks compensatory and punitive damages and injunctive

2  relief in the form of an order preventing Defendants from threatening

3  Plaintiff with punishment or reprisal (Complaint, p. 6).

4

5      Plaintiff attaches a number of exhibits to the Complaint,

6  including: (1) inmate complaint forms; (2) letters from Plaintiff to

7  the state court judge concerning Plaintiff's alleged medical problems;

8  (3) two December 3, 1998 letters to the state court judge from

9  Defendant Harper indicating Plaintiff was "medically clear for court"

10 (but acknowledging that a jail nurse had refused to change Plaintiff's

11 dressing and that a strap on Plaintiff's prosthesis had broken);

12 (4) various state court orders (including an order requiring jail

13 medical personnel to change Plaintiff's dressing, an order requiring

14 the Sheriff's Department to arrange for Plaintiff to be evaluated for

15 new knee braces, an order requiring that Plaintiff not be deprived of

16 his wheelchair until he was fully ambulatory, and an order requiring

17 the Sheriff's Department to submit a report to the court regarding the

18 reasons why Plaintiff's prosthesis was taken and returned broken, and

19 what was being done to replace it); (5) medical records; and (6) a

20 minute order dated April 13, 1999 indicating the state court granted a

21 defense motion to dismiss the proceeding against Plaintiff on the

22 ground that the People were unable to proceed.

23

24                      **DISCUSSION**

25

26 **I.   The Complaint Is Not Signed.**

27

28     In violation of Rule 11(a) of the Federal Rules of Civil

1  Procedure, the Complaint is unsigned.  A court "must strike an

2  unsigned paper unless the omission is promptly corrected after being

3  called to . . . the party's attention."  Fed. R. Civ. P. 11(a).

4  Plaintiff must sign any amended pleading.

5

6  II.  **Plaintiff's Claim for Injunctive Relief Is Moot.**

7

8      It appears Plaintiff is no longer incarcerated at the jail.

9  Hence, Plaintiff's claim for injunctive relief is moot.  See <u>Dilley v.</u>

10  <u>Gunn</u>, 64 F.3d 1365, 1368-69 (9th Cir. 1995).

11

12  III. **The Complaint Fails to Identify Clearly Which Defendant Is Sued**

13       **on Each of Plaintiff's Claims.**

14

15      Under Rule 8(a) of the Federal Rules of Civil Procedure, a

16  complaint must contain a "short and plain" statement of the claim for

17  relief.  "Each averment of a pleading shall be simple, concise, and

18  direct."  Fed. R. Civ. P. 8(e).

19

20      The Complaint does not clearly identify which Defendant is being

21  sued on which claim, and for what alleged wrongdoing.  Plaintiff

22  alleges wrongdoing by unidentified deputies and medical staff, and

23  uses the term "et al.," without identifying those persons or

24  indicating whether they are Defendants.  A complaint is subject to

25  dismissal if one cannot determine from the complaint who is being

26  sued, and for what relief.  <u>McHenry v. Renne</u>, 84 F.3d 1172, 1178 (9th

27  Cir. 1996).

28  ///

## IV.   <u>The Complaint Fails to Allege the Personal Involvement of Each Defendant.</u>

An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation.   See <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989); <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978).   Plaintiff may not sue any supervisor on a theory that the supervisor is liable for the acts of his or her subordinates.   See <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981).   A supervisor may be held liable in his or her individual capacity "for [his or her] own culpable action or inaction in the training, supervision or control of [his or her] subordinates." <u>Watkins v. City of Oakland, Cal.</u>, 145 F.3d 1087, 1093 (9th Cir. 1998) (quoting <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991)).   To state a claim against any individual Defendant, Plaintiff must allege facts showing that the individual defendant participated in or directed the alleged violation, or knew of the violation and failed to act to prevent it.   See <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194 (9th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1154 (1999) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff's vague allegations that Defendants or unidentified deputies, medical staff or others violated Plaintiff's rights, or that supervisors are responsible for the acts of their subordinates, do not suffice under these standards.   See <u>Barren v. Harrington</u>, 152 F.3d at

1194.[7]

**V.  To Allege a Due Process Violation for Deliberate Indifference to**
**Plaintiff's Allegedly Serious Medical Needs, Plaintiff Must**
**Allege the Deliberate Indifference of Each Individual Defendant.**

Jail officials can violate the constitution if they are "deliberately indifferent" to an inmate's serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (Eighth Amendment); Estelle v. Gamble, 429 U.S. 97, 104 (1976) (same).  To be liable for "deliberate indifference," a jail official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment."  Id. at 838.  Allegations of negligence do not suffice. See Estelle v. Gamble, 429 U.S. at 105-06 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).  To the extent Plaintiff sues individual Defendants on a theory of deliberate indifference, Plaintiff must allege each individual Defendant's deliberate indifference to a specified serious medical need of Plaintiff.

---

[7]  The Court notes that Plaintiff identifies some Defendants only by their last names, such as "Nurse Smith" and "Nurse Woods."  Plaintiff is advised that, before the case can proceed, Plaintiff will have to provide identifying information sufficient to permit service of process upon the Defendants.

1  **VI.   The Complaint Fails to Allege an Equal Protection Violation.**

2

3        To allege an Equal Protection violation, Plaintiff must allege

4  facts showing that he was intentionally treated differently from

5  others similarly situated and that there was no rational basis for the

6  difference in treatment.   See <u>Village of Willowbrook v. Olech</u>, 528

7  U.S. 562, 564 (2000); <u>Barren v. Harrington</u>, 152 F.3d at 1194-95.

8  Plaintiff's conclusory allegations that Defendants treated Plaintiff

9  differently from other similarly-situated inmates do not suffice.

10 See <u>Ventura Mobilehome Communities Owners Ass'n v. City of San</u>

11 <u>Buenaventura</u>, 371 F.3d 1046, 1055 (9th Cir. 2004) (conclusory

12 allegations of Equal Protection violation, unaccompanied by

13 allegations identifying others similarly situated or alleging how they

14 are treated differently from plaintiff, insufficient to withstand

15 motion to dismiss);  <u>see generally</u> <u>Ivey v. Board of Regents of Univ.</u>

16 <u>of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982) (conclusory allegations

17 insufficient to state claim for relief).

18

19 **VII. Allegations of Random and Unauthorized Property Deprivations Do**

20      **Not State a Constitutional Claim for Relief.**

21

22       To the extent Plaintiff alleges a Defendant or Defendants took or

23 destroyed Plaintiff's property in violation of Due Process, the

24 Complaint alleges no cognizable constitutional claim for relief.   A

25 random and unauthorized property deprivation does not constitute a

26 denial of Due Process if state law provides an adequate post-

27 deprivation remedy.   <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984).

28 California law provides an adequate post-deprivation remedy for random

13

1 and unauthorized property deprivations.  See Barnett v. Centoni, 31

2 F.3d 813, 817 (9th Cir. 1994).

3

4 **VIII.  Plaintiff May Not Sue Individual Defendants for Damages in Their**

5         **Individual Capacities for Alleged Violations of the Americans**

6         **with Disabilities Act or the Rehabilitation Act.**

7

8         Title II of the ADA provides that "no qualified individual with a

9 disability shall, by reason of such disability, be excluded from

10 participation in or be denied the benefits of the services, programs,

11 or activities of a public entity, or be subjected to discrimination by

12 any such entity."  42 U.S.C. § 12132.  Section 504 of the

13 Rehabilitation Act prohibits disability discrimination in a program or

14 activity receiving federal financial assistance.  See 29 U.S.C. §

15 794(a).  Neither Title II of the ADA nor section 504 of the

16 Rehabilitation Act provides a damage remedy against individual public

17 officials in their individual capacities.  See Brewer v. Wisc. Bd. of

18 Bar Examiners, 270 Fed. App'x 418, 421 (7th Cir. 2008);[8] Williams v.

19 McLemore, 247 Fed. App'x 1, 8 (6th Cir. 2007); Garcia v. S.U.N.Y.

20 Health Services Center, 280 F.3d 98, 107 (2d Cir. 2001); Alsbrook v.

21 City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (en banc),

22 cert. dismissed, 529 U.S. 1001 (2000); Green v. Adams, 2008 WL

23 1766737, at *5 (E.D. Cal. Apr. 16, 2008); Curry v. Tilton, 2007 WL

24 2778363, at *3 (N.D. Cal. Sept. 21, 2007); Thomas v. Nakatani, 128 F.

25 Supp. 2d 684, 691-92 (D. Hawai'i 2000), aff'd on other grounds, 309

26 _____

27     [8]    The Court may cite appellate opinions not officially
published which were issued on or after January 1, 2007.  See
28 Fed. R. App. P. 32.1(a).

F.3d 1203 (9th Cir. 2002); see also Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002), cert. denied, 537 U.S. 1104 (2003) (plaintiff could not sue public official in his or her individual capacity under 42 U.S.C. section 1983 for violations of either the ADA or the Rehabilitation Act). Therefore, Plaintiff may not sue the individual Defendants in their individual capacities for violations of Title II of the ADA or section 504 of the Rehabilitation Act.

**CONCLUSION**

For all of the foregoing reasons, the Complaint is dismissed with leave to amend. See Lopez v. Smith, 203 F.3d at 1130; 28 U.S.C. § 1915(e)(2)(B), § 1915A(b). If Plaintiff still wishes to pursue this action, he is granted thirty (30) days from the date of this Memorandum and Order within which to file a Second Amended Complaint. The Second Amended Complaint shall be complete in itself. It shall not refer in any manner to any prior complaint. Plaintiff shall set forth his claims for relief separately and shall identify each Defendant sued on each claim for relief. See Fed. R. Civ. P. 10(a), (b). Plaintiff shall not add any new Defendants without leave of Court. See Fed. R. Civ. P. 21. Failure to file timely a Second Amended Complaint may result in the dismissal of this action.

///
///
///
///
///
///

15

1    Plaintiff's requests for a settlement conference are denied

2  without prejudice.   Plaintiff's request for an order directing service

3  of process by the United States Marshal is denied without prejudice.

4

5    DATED: _____ 8/12 _____, 2008.

6

7

8  _____
            TERRY J. HATTER JR.
9        UNITED STATES DISTRICT JUDGE

10

11

12  Presented this 7th day of

13  August, 2008 by:

14

15  _____
          CHARLES F. EICK
16  UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26

27

28